UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TAMMY ARD, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | **Civil Action No.** |
| } | **2:19-cv-02100-MHH** |
| **WAL-MART STORES, INC.,** } | |
| } | |
| **Defendant.** } | |
| } | |

**MEMORANDUM OPINION**

This action comes in the wake of the Supreme Court's decertification of a nationwide Title VII class action suit that female employees brought against their employer, Walmart. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).[1] Former *Dukes* class members have brought gender discrimination claims based on Walmart's pay and promotional policies in district courts across the country. In this action, 51 former members of the *Dukes* class allege that while they worked in Walmart's Region 6 and were subject to the company's regional pay and promotion policies and practices, Walmart discriminated against them because they are women,

---

[1] The defendant changed its legal name from Wal-Mart Stores, Inc. to Walmart Inc. effective February 1, 2018, prior to the filing of this action. *See Walmart Changes its Legal Name to Reflect How Customers Want to Shop*, WALMART.COM, https://corporate.walmart.com/newsroom/2017/12/05/walmart-changes-its-legal-name-to-reflect-how-customers-want-to-shop (Dec. 6, 2017). The Court refers to the defendant as Walmart.

paying them less than male employees for the same work and offering them significantly fewer managerial opportunities than male employees in the region received. (Doc. 20, pp. 4–5).[2]

Walmart has asked the Court to sever the plaintiffs' claims and to dismiss the claims of individual plaintiffs, either for lack of standing to pursue their disparate impact claims or for failure to state a claim. (Docs. 5, 28). For the reasons discussed below, the Court finds that the plaintiffs must proceed separately, so the Court will grant Walmart's motion to sever and deny without prejudice Walmart's motion to dismiss.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The *Dukes* class members have worked tirelessly to assert their discrimination claims against Walmart and have their grievances heard. It has been a long, difficult road; they've met procedural obstacles at every turn. Following decertification of the *Dukes* class, former class members attempted to bring regional class actions against Walmart. *See, e.g., Dukes v. Wal-Mart Stores, Inc.*, No. C 01-02252 CRB, 2012 WL 4329009 (N.D. Cal. Sept. 21, 2012); *Phipps v. Wal-Mart Stores, Inc.*, No. 3:12-01009, 2016 WL 10649206 (M.D. Tenn. Nov. 18, 2016); *Odle v. Wal-Mart*

---

[2] In their amended complaint, the plaintiffs allege that Walmart's Region 6 covers "Alabama and parts of Mississippi, Louisiana and the Florida panhandle." (Doc. 20, p. 5). Some of the plaintiffs allege that they worked only in stores in states other than Alabama, Mississippi, Louisiana, and Florida, (Doc. 20, p. 42 (Georgia); Doc. 20, p. 338 (Arkansas)). Additionally, one plaintiff, Bonnie Spadaro, has not alleged the state or store location where she was employed. (Doc. 20, p. 238).

*Stores, Inc.*, No. 3:11-cv-2954-O, 2012 WL 5292957 (N.D. Tex. Oct. 15, 2012); *Love v. Wal-Mart Stores, Inc.*, No. 0:12-cv-61959, 2012 WL4739296 (S.D. Fla. 2012). The Supreme Court's 2018 ruling in *China Agritech, Inc. v. Resh* dashed that effort. 138 S. Ct. 1800 (2018). In *American Pipe & Constr. Co. v. Utah*, the Supreme Court had held that the filing of a putative class action tolls the statute of limitations for absent class members to bring individual claims, even if the applicable statute of limitations otherwise would have run. 414 U.S. 538, 552–53 (1974). In *China Agritech*, the Supreme Court narrowed the scope of *American Pipe* tolling such that, upon decertification of a class, a putative class member may not "commence a class action anew beyond the time allowed by the applicable statute of limitations." *China Agritech*, 138 S. Ct. at 1804.

Barred by statutes of limitation from proceeding as a class, the former class members have adopted the strategy at play here -- joining their individual claims against Walmart in a consolidated action. Ours is one of several such actions. *See, e.g., Price v. Wal-Mart Stores, Inc.*, No. 19-80152-Civ-Scola, 2019 WL 3067498 (S.D. Fla. July 12, 2019); *Renati v. Wal-Mart Stores, Inc.*, No. 19-cv-02525-CRB, 2019 WL 5536206 (N.D. Cal. Oct. 25, 2019); *Medeiros v. Wal-Mart, Inc.*, 434 F. Supp. 3d 395 (W.D. Va. 2020).

The plaintiffs, female employees of Walmart stores in Alabama, Mississippi, Louisiana, Georgia, Arkansas, and Florida, bring claims of disparate treatment and

disparate impact under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq.* (Doc. 20, pp. 2, 366–67). The plaintiffs allege that before filing this lawsuit, each timely filed a charge with the EEOC against Walmart for gender discrimination, and each brought suit within 90 days of receiving her right-to-sue letter. (Doc. 20, p. 4). In their amended complaint, the plaintiffs assert that Walmart instituted policies and practices that fostered discrimination against female employees. The plaintiffs allege facts to demonstrate how each of them was harmed by the allegedly discriminatory policies. (Doc. 20).

The plaintiffs assert that Walmart's compensation and promotion policies and practices, even as adjusted over the years, perpetuated a system which had adverse impacts on female employees. The plaintiffs allege that Walmart's regional vice president and/or Walmart's regional personnel managers supervised and implemented all pay and promotion decisions in Region 6. (Doc. 20, p. 5). All Walmart employees' compensation rates were based on job classifications, though Walmart management could make exceptions to those pay rates. (Doc. 20, p. 6). The plaintiffs allege that Walmart made exceptions to pay rates for male employees at a higher rate than female employees. (Doc. 20, p. 6). In 2004, Walmart adjusted its departmental pay classifications in a way that "formally assigned the traditionally female jobs to lower departmental pay classes than the same jobs performed by men in the traditionally male jobs and departments." (Doc.

20, p. 8). In 2005, Walmart added a prior experience component to its compensation structure, which the plaintiffs allege failed to take into full account interruptions in female employees' work history, such as interruptions due to child-bearing and child-rearing. The prior experience component of Walmart's pay structure produced lower salaries for the plaintiffs. (Doc. 20, p. 10). In 2006, Walmart set a pay cap for each position that further impacted female employees' earning potential. (Doc. 20, p. 11).

The plaintiffs allege that the wage disparities followed a female employee when Walmart promoted her to the role of management trainee, assistant store manager, and store manager. (Doc. 20, p. 13). For example, an hourly employee promoted to management trainee had a pay rate that was based on her hourly pay rate before promotion. (Doc. 20, p. 14). When a trainee was then promoted to assistant store manager, her pay was based on her pay rate as a trainee. (Doc. 20, p. 15). A store manager's yearly pay raise was based on the success of the store he or she managed. The plaintiffs allege that male store managers were "disproportionately assigned" to better performing stores than female store managers. (Doc. 20, p. 17).

The plaintiffs allege that many of the discriminatory factors in Walmart's pay policies also applied to Walmart's promotion practices. The plaintiffs assert that female employees were restricted to traditionally female departments, such as

jewelry, service desk, and health and beauty. Those workers were promoted at much lower rates than employees in traditionally male departments, such as sporting goods and hardware. (Doc. 20, pp. 19–20).

The plaintiffs assert that lower-level employees were not made aware of promotion opportunities and selection criteria. (Doc. 20, pp. 22–23, 26–27). Even after Walmart began requiring periodic postings of management openings, female employees were deterred from applying and/or receiving promotions by various policies and practices, such as a relocation policy, a practice of management not filling openings if they were not satisfied with applicants, and a policy requiring applicants for store manager positions to receive permission to apply from their district manager. (Doc. 20, pp. 21–27). The plaintiffs cite surveys, internal and external reports, and records of management meetings that reveal a history of gender stereotyping and discrimination in Walmart's promotion policies and practices. (Doc. 20, pp. 27–30).

In the amended complaint, the plaintiffs plead facts relating to each individual plaintiff's work history and the alleged discrimination suffered by each plaintiff as a result of Walmart's alleged policies and practices. (Doc. 20, pp. 36–366). The plaintiffs allege specific events to demonstrate how Walmart's pay rate and raise policies and practices were discriminatory, including instances where male employees with similar work experience were paid more than female employees

6

(*e.g.*, Doc. 20, p. 153), and applications of Walmart's alleged "start low, stay low" system of pay raises (*e.g.*, Doc. 20, p. 100). Plaintiffs also plead facts to demonstrate how female employees were discriminated against for promotions. For example, the plaintiffs allege that one plaintiff was told to "keep her mouth shut" when she asked about men receiving promotions over her. (Doc. 20, p. 87). The plaintiffs describe instances of Walmart's "word-of-mouth" system for promotions working against female employees who had expressed interest in promotions but were denied an opportunity to apply for open positions because they were not told of the openings, (*e.g.*, Doc. 20, p. 285). The plaintiffs allege that many of them eventually left Walmart out of frustration with their compensation and inability to advance within the company. (*E.g.*, Doc. 20, p. 247).

## II. ANALYSIS

So may these 51 female employees join in one action their individual Title VII claims based on Walmart's alleged regional policies and practices that purportedly favored male employees over these female employees in pay and promotions? Under Rule 20(a)(1) of the Federal Rules of Civil Procedure, plaintiffs may join in one action if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and (2) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). "Misjoinder of parties

7

is not a ground for dismissing an action." Fed. R. Civ. P. 21. If joinder is not appropriate under Rule 20(a), a district court may "drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21.

District courts have broad discretion regarding severance of claims and may consider "judicial economy, case management, prejudice to the parties, and fundamental fairness" when deciding whether to sever claims. *See West v. Janssen Pharm., Inc.*, No. 2:15-cv-553-WKW-DAB, 2017 WL 3492871, at *2 (M.D. Ala. Aug. 4, 2017) (citing *In re Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1367 (11th Cir. 2010)). Rule 20 is designed to "promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." *Alexander v. Fulton County*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). In some instances, the goals of convenience and speed of resolution may be best served by severing joined claims or plaintiffs, such as when the number of plaintiffs would create a trial that is inefficient and unmanageable, *see Ulysse v. Waste Mgmt, Inc.*, 645 Fed. Appx. 838, 839 (11th Cir. 2016), but a district court should not elevate efficiency and manageability over other important considerations like fundamental fairness and prejudice to the parties.

Ms. Ard and the fifty other plaintiffs in our action argue that their disparate impact and disparate treatment claims meet Rule 20's standard for joinder. They

contend that "the relevant 'transaction or occurrence' is Walmart's adoption of the policy and practice that caused the disparate impact . . . ." (Doc. 43, p. 5). The plaintiffs cite the language of Title VII which requires proof of "particular employment practice[s]" that caused a disparate impact on the plaintiffs on the basis of sex. (Doc. 43, pp. 5–6) (citing 42 U.S.C. § 2000e-2(k)(1)(A)–(B)(i)). The plaintiffs assert that because they all were employees in Walmart's Region 6, they all were "subject to the same compensation and promotion policies and practices regardless of their store or district in that Region." (Doc. 20, p. 5). The plaintiffs argue that the specific practices challenged by each individual plaintiff "were imposed, controlled and administered at the regional level, not by local supervisors, department managers, store managers or anyone else." (Doc. 43, p. 14).

Despite this focus on regional management's role in the discriminatory conduct, plaintiffs have acknowledged through their amended complaint that local supervisors and managers played a significant role in determining pay rates, raises, and promotions. For example, the plaintiffs allege that store managers "justified denying promotions to women or paying them less than their male employees because of gender stereotypes . . . ." (Doc. 20, p. 29). Additionally, plaintiffs cite specific instances of store managers and supervisors denying or deterring female employees from seeking or obtaining pay raises or promotions without consulting management at the regional level. For example, the plaintiffs allege that when

Shavonya Byrd asked about a position in the manager training program, her store manager indicated that no position was available and then hired a male for the program. (Doc. 20, p. 58). When Ms. Byrd later asked an HR manager about the qualifications needed to be considered for a vacant position in human resources, the HR manager responded she would never get the position "unless one of us die [sic]." (Doc. 20, p. 58). When Penny Sullivan requested a promotion, the male store manager allegedly told her to "find a husband," and made it "clear that for him, men were superior to women — that women may work hard and do a good job, but men must run things." (Doc. 20, p. 246). Despite the plaintiffs' contention that discriminatory treatment occurred at the regional level rather than at the store or local level, the plaintiffs' individual allegations indicate that local supervisors and store managers made pay and promotion decisions.

These allegations of local decision-making run headlong into *Dukes*, and the *Dukes* decision upends the plaintiffs' effort to join their Title VII claims concerning Walmart's wage and promotion policies in a single action. The Supreme Court decertified the nationwide class in *Dukes* for lack of commonality under Rule 23(a)(2) of the Federal Rules of Civil Procedure because the plaintiffs' failure to provide "convincing proof of a companywide discriminatory pay and promotion policy" precluded "the existence of any common question." *Dukes*, 564 U.S. at

359.³ The Supreme Court stated that on the evidentiary record before it, there was "nothing to unite all the plaintiffs' claims since . . . the same employment practices do not touch or concern all members of the class." *Dukes*, 564 U.S. at 359 n. 10 (quotation marks and citation omitted).

The *Dukes* plaintiffs argued that Walmart's culture made "every woman at the company the victim of one common discriminatory practice," but the Supreme Court found that Walmart's pay and promotion policies permitted lower-level decision makers to exercise discretion in how the policies were applied. *Dukes*, 564 U.S. at 355. The Supreme Court determined that "[t]he whole point of permitting discretionary decisionmaking is to avoid evaluating employees under a common standard," and the plaintiffs had not presented sufficient evidence of "a common mode of exercising discretion that pervades the entire company . . . ." *Dukes*, 564 U.S. at 353, 356. Ms. Ard and her fellow plaintiffs face similar headwinds.

Other district courts hearing former *Dukes* plaintiffs' claims based on regional policies have concluded that the plaintiffs' Title VII claims do not share common questions of law or fact adequate to support Rule 20 joinder. In *Price v. Wal-Mart Stores, Inc.*, 45 female employees from 60 different Walmart stores across six states filed a joint action against the retailer under Title VII. The Title VII claims in that

---

³ Under Rule 23(a)(2), there must be "questions of fact or law common to the class." Fed. R. Civ. P. 23(a)(2).

action largely mirrored those in our action. No. 19-80152-Civ-Scola, 2019 WL 3067498 (S.D. Fla. July 12, 2019). The district court severed the claims of the plaintiffs, finding that there was "no common policy, practice, or set of facts that applied to every Plaintiff." *Price*, 2019 WL 3067498, at *2. The district court was not persuaded that the discrimination resulted from corporate policies rather than the actions of individual decision makers within the region. *Price*, 2019 WL 3067498, at *2. Similarly, in *Monda v. Wal-Mart, Inc.*, the district court held that eight plaintiffs' claims were not properly joined because the claims did not share common operative facts. No. 3:19-cv-155, 2019 WL 7020427 (S.D. Ohio Dec. 20, 2019). The district court found that discrimination cannot arise from the same transaction or occurrence when the plaintiffs "worked in different Walmart stores, [had] different male comparators, worked in various positions and departments, and worked at different points in time" between 1991 and 2015. *Monda*, 2019 WL 7020427, at *2.

Similarly, in *Radtka v. Wal-Mart Stores, Inc.*, 34 former *Dukes* plaintiffs who had worked at dozens of stores across six states brought claims of gender discrimination based on pay and promotion policies. *Radtka*, No. 19-80153-Civ-Scola, 2019 WL 3067946, at *1-2 (S.D. Fla. July 12, 2019). In response to Walmart's motion to sever, the plaintiffs asserted that the discrimination was a result of corporate policies, but the district court concluded that there was "no common

policy, practice, or set of facts that applied to every Plaintiff." *Radtka*, 2019 WL 3067946, at *2. The court found that "'similar issues of liability alone are not sufficient to warrant joinder.'" *Renati*, 2019 WL 3067946, at *2 (quoting *Rhodes v. Target Corp.*, 313 F.R.D. 656, 659 (M.D. Fla. 2016)).

Other chain stores have succeeded in fighting off multi-plaintiff discrimination actions alleging centralized policies of discrimination. In *Grayson v. K-Mart Corp.*, the district court granted K-Mart's motion to sever the age discrimination claims of 11 former store managers. *Grayson*, 849 F. Supp. 785, 786 (N.D. Ga. 1994). The plaintiffs worked at stores in four states and alleged that K-Mart discriminated against them based on their age when K-Mart demoted each plaintiff. *Grayson*, 849 F. Supp. at 786. The district court concluded the plaintiffs' claims did not arise out of the same transaction or occurrence. *Grayson*, 849 F. Supp. at 788. Based on evidence that the district and regional managers recommended the demotions of each plaintiff, the district court rejected the plaintiffs' contention that the company's centralized policy left lower-level managers with no discretion:

> Taking plaintiffs' reasoning to its logical end, every employment decision made by managers subject to central policies and review would constitute one transaction or occurrence, and any group of aggrieved employees would be entitled to join its claims under Rule 20(a). The Court declines to read the permissive joinder rules so broadly.

*Grayson*, 849 F. Supp. at 789.

13

This Court struggles with the notion that a company like Walmart can adopt a written policy that prohibits discrimination and then signal to local managers that they are free to use their "discretion" to, as is alleged in this case, consistently promote men rather than women and make hiring decisions that consign only women to lower paying positions without facing company-wide – or at least regional – liability for operating with a wink and a nod toward an unwritten but broadly implemented preference for male employees. As Justice Ginsburg wrote in *Dukes*, "Wal–Mart's supervisors do not make their discretionary decisions in a vacuum." 564 U.S. at 371 (Ginsburg, J., concurring in part and dissenting in part). Justice Ginsburg recounted class certification evidence of a carefully constructed corporate culture, instilled in lower level managers through "frequent meetings to reinforce the common way of thinking, regular transfers of managers between stores to ensure uniformity throughout the company, monitoring of stores 'on a close and constant basis,' and 'Wal–Mart TV,' 'broadcas[t] ... into all stores.'" *Id.*

Similarly, in our operative complaint, the plaintiffs allege, for example, that:

> All Wal-Mart Store Managers have been required to attend training programs at the company's Walton Institute where they were taught, among other things, that the reason there are few female managers at Wal-Mart is because men were "more aggressive in achieving those levels of responsibility" than women. Managers were also cautioned that efforts to promote women could lead to the loss of qualified men.

(Doc. 20, p. 29, ¶ 61). The plaintiffs allege that in 2004,

> at a meeting of all Wal-Mart District Managers presided over by Wal-Mart's CEO Thomas Coughlin, the District Managers were told that they are "the culture" of Wal-Mart, that the key to Wal- Mart's success is "single focus to get the job done", that "men are better at focus single objective" and being "results driven", and that they should create a "culture of execution" and a "culture of results" as they picked "[f]uture leaders."

(Doc. 20, p. 29, ¶ 62). Such a sophisticated and insidious means of planting and nurturing discrimination, assuming the truth of the allegations in our complaint, makes the corporate delegation of local discretion the animating tool of a veiled corporate policy of discrimination, and that policy, if proven, would constitute a common fact that has produced for the employees harmed by the policy a series of transactions or occurrences that injured them.

Were this Court writing on a clean slate, the Court would find that the plaintiffs' Title VII discrimination claims share a common question of fact concerning Walmart's unwritten policy of encouraging local managers to exercise their discretion to favor male employees over female employees in pay and promotion and would permit joinder of the plaintiffs' Title VII claims under Rule 20, at least for purposes of discovery. Doing so would enable the plaintiffs to seek relief severally in a way that would save all parties the expense and inconvenience of litigating over the same alleged unwritten discriminatory policy in dozens of actions across dozens of district courts. A company like Walmart likely can absorb the expense of multi-district litigation and likely can manage its expense by hiring

regional or national counsel to develop a unified, streamlined defense to the claims of dozens of employees in dozens of districts.  But individual employees may be dissuaded by the expense and inconvenience of obtaining attorneys and litigating their Title VII claims locally, hence Walmart's divide and conquer strategy.  Here, concerns for fairness marry with overall efficiencies in case management to support joinder of individual claims.

But a district court may not exercise its discretion to achieve the goals of fairness and efficiency if the prerequisites for joinder are lacking.  Bound by the majority opinion in *Dukes*, the Court cannot find that "a question of fact or law common to all plaintiffs will arise in th[is] action" for purposes of Rule 20(a).  The Supreme Court, on the evidence that Justice Ginsburg cited, held that "Wal-Mart's 'policy' of allowing discretion by local employers over employments matters . . . is a policy against having uniform employment practices" that might give rise to common questions of fact or law under Rule 23(a)(2).  *Dukes*, 564 U.S. at 355 (emphasis omitted).  This Court cannot distinguish the allegations here from the class certification evidence in *Dukes* and therefore must follow the holding in *Dukes*.[4]  Accordingly, the Court finds that joinder of the plaintiffs' Title VII claims against Walmart is improper, and severance under Rule 21 is appropriate.

---

[4] On another record, the distinction between allegations and evidence might have a substantial impact on the analysis of joinder under Rule 20.  But here, the Court must assume that the allegations in the plaintiffs' amended complaint rest on the evidence that the *Dukes* plaintiffs used

## IV. CONCLUSION

For the reasons stated above, by separate order, the Court will grant Walmart's motion to sever the plaintiffs' claims. (Doc. 5). The Court will deny Walmart's motion to dismiss (Doc. 28) without prejudice, and the Court will find that Walmart's motion to stay discovery (Doc. 7) is moot.

**DONE** and **ORDERED** this September 28, 2020.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

to urge class certification. The Court finds no daylight between the allegations and evidence on the record before it.